377 So.2d 328 (1979)
STATE of Louisiana
v.
Joseph W. DUPREE.
No. 64810.
Supreme Court of Louisiana.
November 12, 1979.
*329 MacAllynn J. Achee, Dodd, Achee, Burt & Cook, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Kay Kirkpatrick, John W. Sinquefield, Asst. Dist. Attys., for plaintiff-appellee.
DENNIS, Justice.[*]
Defendant, Joseph W. Dupree, appeals from his convictions by a district judge of several claims stemming from an attempt to commit murder with a fire bomb, urging that it was reversible error for the judge to receive in evidence, over his objection, hearsay statements of a co-conspirator not made in furtherance of the conspiracy or during its continuation. After reviewing the record and considering the parties' arguments, we conclude that the defendant's assignment of error has merit. Accordingly, we reverse defendant's four convictions for attempted murder and conspiracy to commit murder, aggravated arson and unlawful bomb manufacture, and his four concurrent, hard labor sentences of five years; the case is remanded for a new trial. The co-conspirators' hearsay statements, which occurred during custodial interrogation following their arrest, did not fall within the statutory co-conspirator exception to the hearsay rule, because the declarations were not made in furtherance of the conspiracy and occurred after it had been abandoned. La.R.S. 15:455.
In the early morning hours of December 16, 1976 Bryan Walker foiled an attempt by three unidentified men to attach a fire bomb to his car parked outside his house, exchanging gunfire with them as they fled. Walker, general superintendent of Keller Company operations, was embroiled in a labor dispute between the company and its employees. Three days after the attempted bombing, Joe Neal Stephens was arrested in a car identified by police as the getaway vehicle and confessed to his involvement in the crime. Stephens' confession implicated his brother, Felix Stephens, and several company employees, including Joseph W. Dupree. The defendant and all but Felix Stephens were taken into custody during the next several days. Felix Stephens was not arrested until February 24, 1977, when he gave a statement which tended to incriminate the defendant, Dupree. There is no evidence that the conspiracy between the employees continued after the abortive bombing of Walker's car on December 16, 1976, or that any of them said or did anything which actually promoted the conspiracy after this date.
In his confession to police officers, Joe Neal Stephens sketched the following picture of the conspiracy: Dupree and Swepson Chaney met him, his brother Felix, and Larry Hentz at Duke's Lounge in Plaquemine, Louisiana late at night on December 15, 1976. Dupree and Chaney asked Stephens *330 and the others if they "had the materials available to hit Bryan Walker." Upon receiving an affirmative reply, Dupree and Chaney told Stephens "to go ahead and hit him ...." It was agreed that a price of $500 would be paid for the crime. Stephens, his brother Felix and Larry Hentz constructed the bomb outside the lounge in Plaquemine, then drove to Baton Rouge and put the bomb under Walker's truck in the early hours of December 16, 1977.
The confession of Felix Stephens also implicated Dupree in the attempted bombing. According to his statement Dupree attended meetings with Larry Hentz and Swepson Chaney on December 13 and December 15, 1977, at which the participants discussed placing a bomb on Walker's vehicle.
At trial, over defendant's timely objections, the police officers who received the Stephenses' confessions were allowed to narrate in full the details of the confessions which implicated Dupree in the attempted bombing. Joe Neal Stephens and Felix Stephens were not called as witnesses by the state, apparently as the result of plea bargains. By allowing the police officers to relate the Stephenses' confessions which incriminated Dupree, the trial court committed reversible error, because the confessions were inadmissible hearsay evidence, the introduction of which deprived Dupree of his right to confront and cross-examine the witnesses against him.
The confessions were hearsay evidence, falling within the definition of hearsay adopted by this Court. Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value on the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370 (La.1978). The Stephenses' out-of-court confessions rested for their value upon the credibility of the out-of-court asserters and were offered as assertions to show the truth of the matter asserted, viz., that Dupree joined in a conspiracy and an attempt to bomb Walker's vehicle.
The confessions were not admissible because they did not fall within the statutory co-conspirator exception to the hearsay rule, as the prosecution contends. La.R.S. 15:455 provides:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
Before a co-conspirator's declaration may be introduced under this exception, a prima facie case of conspiracy must have been established and it must be shown that the declaration was made in furtherance of the common enterprise and during its continuation. State v. Carter, 326 So.2d 848 (La.1975); State v. Kaufman, 331 So.2d 16 (La.1976); State v. Hodgeson, 305 So.2d 421 (La.1975); State v. Michelli, 301 So.2d 577 (La.1974); Comment, The Co-Conspirator Exception to the Hearsay RuleThe Limits of Its Logic, 37 La.L.Rev. 1101 (1977); C. McCormick, Evidence, § 267 (2d ed. 1972). Introduction of a hearsay declaration without fulfillment of these requisites violates both the statute which prohibits the admission of hearsay evidence not falling within any exception to the rule, La.R.S. 15:434, and the constitutional guarantee of an accused's right to confront and cross-examine the witnesses against him. La.Const. Art. 1, § 16; State v. Michelli, 301 So.2d 577 (La.1974); cf. State v. Carter, 326 So.2d 848 (La.1975).
Applying the statutory co-conspirator exception to the evidence in the present case, we conclude that the hearsay declarations were incorrectly admitted into evidence, because the out-of-court statements did not further the common enterprise or occur during its continuation. The common enterprise, the objective of the conspiracy, *331 was the murder of Bryan Walker by bombing his automobile. It was clearly abandoned in failure by the co-conspirators when Walker drove them from his vehicle with gunfire. The conspiracy was not shown to have continued after this time by any evidence introduced by the state. Its continuation was not established by the mere fact that some of the co-conspirators were at large when the declarations were made. Moreover, the declarations were not made in furtherance of the common enterprise. On the contrary, the Stephenses' confessions, which named and incriminated all of the co-conspirators, worked to impede rather than to promote the objective of Bryan Walker's murder. The declarations furthered nothing other than perhaps the Stephenses' own plea bargains.
Contrary to the prosecution's argument, neither the circumstance that the trier of fact was a judge nor the introduction of other evidence of Dupree's guilt independent of the hearsay evidence rendered the error of its admission harmless. Although we are aware of the notion that a judge is better able than a jury to discern and exclude from consideration inadmissible evidence, the record in this case indicates that the judge fully considered the evidence and based his findings of guilt thereon. During the trial the judge ruled that the hearsay evidence was admissible and there is nothing in the record to indicate that he reversed his decision or decided to exclude it from consideration in deciding the case. The judge's oral reasons for judgment, in opposition to the prosecution's argument, do not show that he excluded the out-of-court declarations in finding Dupree guilty. He stated that he was "convinced from the evidence" that Dupree "was going along with his friends," and had not, as he testified, discouraged the conspiracy. Consequently, the unsworn out-of-court statements by the Stephenses implicating Dupree in the plot to kill Bryan Walker were highly prejudicial and probably contributed to the trial judge's findings of guilt. Although there was other evidence of Dupree's complicity, it was not of a quality or magnitude as to rob the improperly admitted hearsay evidence of its substantial effect upon Dupree's rights. Consequently, the defendant's convictions and sentences must be reversed and the case remanded for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.
SUMMERS, C. J., dissents.
BLANCHE, J., dissents. I agree that the hearsay evidence was inadmissible, but am of the opinion that the error is harmless in view of other evidence as to defendant's guilt.
BLANCHE, Justice (dissenting).
I respectfully dissent. The Payne & Keller Company made the decision to lay off a number of their employees and as a result of that controversy, Brian Walker, who was a project superintendent and responsible for the laying off of the employees, was designated for death. His death was to be accomplished by attaching a home-made fragmentation bomb to his pickup truck. The evidence of the defendant's involvement in this enterprise is as follows: From Larry Hentz, a co-conspirator, comes the specific detailed and unimpeached testimony as to the planning and the assistance that defendant gave in procuring the material for the construction of the bomb; there is also testimony from other witnesses who were approached by the defendant for the purpose of obtaining dynamite from them.
Larry Hentz was, by his own testimony, one of the conspirators and the one who actually constructed the bomb; he was also one of those whose attempt to attach the bomb to Walker's truck was frustrated when Walker surprised them in the act. Hentz testified that the defendant and Swep Chaney were the persons who planned the bombing; that defendant was the one who arranged for the source of supply of the plastic explosive used in making the bomb; that defendant had tried to obtain dynamite at first, but was unsuccessful in doing so; that defendant helped in planning and arranging for another bombing *332 which took place in Mississippi; that defendants Chaney, Hentz and at least one of the Stephens brothers met at different times and places (all specified in the testimony) in order to make arrangements for the carrying out of the plans to bomb (or in some other way cause injury to) Walker; that defendant put Hentz in touch with those who instructed him as to the making of the bomb; that the idea of using a bomb originated with the defendant; that defendant and Chaney agreed to pay for the bombing; that defendant supplied the money to purchase blasting caps; and that defendant directed Hentz to the person who supplied the blasting caps the night of the bombing.
This writer agrees that the police who received the Stephens' confession should not have been allowed to narrate that part of the confession which implicated Dupree in the attempting bombing, the same being hearsay. But, none of the detailed involvement of defendant's participation in this crime came from Stephens' confession and to this writer, it seems unbelievable that this incredibly innocuous hearsay statement "go ahead and hit him ..." could possibly serve as a basis for reversal.
This case was tried before a trial judge alone and it is doubtful that the admission of that statement, which is the technicality upon which this conviction is reversed, would have been remembered by the trial judge in the maze of the other overwhelming and incriminating evidence against the defendant.
I respectfully submit that the error is harmless and did not result in a miscarriage of justice. It was not prejudicial to any substantial right of the accused and did not constitute a substantial violation of a statutory right. Art. 921, C.Cr.P.
NOTES
[*] Chief Judge Paul B. Landry, Retired, participated in this decision as an Associate Justice Ad Hoc.