403 So.2d 712 (1981)
STATE of Louisiana
v.
Joseph V. MEREDITH.
No. 81-KA-0214.
Supreme Court of Louisiana.
September 8, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John Sturgeon, Dist. Atty., Glenn B. Gremillion, John F. Johnson, Asst. Dist. Attys., for plaintiff-appellee.
Leo Boothe of Smith, Taliaferro, Seibert, Boothe & Purvis, Jonesville, Roy S. Halcomb, Alexandria, for defendant-appellant.
*713 BLANCHE, Justice.[*]
Defendant, Joseph V. Meredith, was charged with simple burglary of an inhabited dwelling in violation of R.S. 14:62.2. Defendant was convicted and subsequently sentenced to three years imprisonment at hard labor. The following is a painful rendition of the facts brought forth at defendant's trial.
On October 1, 1978, Mrs. Allene Thompson returned to her Jonesville home after a weekend outing with her family. Noticing broken glass in one of the home's doors, a bucket filled with champagne and wine glasses sitting outside, and an inside light on, Mrs. Thompson surmised that a burglary was in progress. She ran across a vacant lot to the home of her neighbors, J. V. Meredith and Routh Lee Meredith, for assistance. After getting a gun from them, she returned to her house with the Merediths.
Upon entering the house, they found it had been ransacked and left in complete disarray. Several pots with leftover food were on the stove and meat and grease was smeared into the carpet in various places in the house. On the dining room table, Mrs. Thompson saw a twenty-inch piece of galvanized pipe, three drink glasses, several soda bottles, and a partially filled bottle of liquor. Instinctively, Mrs. Thompson removed the pipe from the glass table top and placed it on some newspaper before putting it back on the tabletop. Meanwhile, Mrs. Meredith gathered the glasses from the table and washed them.
Leaving the Merediths in the kitchen area, Mrs. Thompson surveyed the rest of the house, noting the various items which had been stolen. Virtually everything of significant value was gone. Among the most valuable were her china, sterling and crystal glassware, three rifles, pendulum clock, black onyx clock, silver trays, brass candlesticks, jewelry and $3000 in cash. As the accounting was being completed, Mr. Thompson, who was not with his wife when the burglary was discovered, arrived on the scene. Mr. Meredith, the defendant, was in and out of the house as he was making drinks for the Thompsons. Sometime in this period, the iron pipe disappeared.
Mrs. Thompson called the sheriff's office but experienced difficulty in speaking with the officers as Mrs. Meredith "snatched" the phone out of her hand. Finally, she was able to use the phone and contacted the sheriff's office. Deputies arrived shortly thereafter.
The actual police investigation was fraught with difficulties. When Deputy Blunschi arrived, both the Merediths and Thompsons were present. He attempted to secure the crime scene, but was hampered by a nervous Mrs. Meredith who said she had touched a lot of things in the house and continued to do so during the investigation.
On-the-scene investigation, according to estimates, continued for at least three hours. During this time, the defendant was continually returning to his house to make drinks for the Thompsons, his wife and himself. At one point, he brought some gumbo over for the officers to eat. During one of his absences, Deputy Price requested fingerprints from Mrs. Meredith, who vehemently refused. Months later, it was established that her prints were on a metal cash box which she said she had not touched that night. The only fingerprints the police obtained that night were the Thompsons'.
The case quieted as the officers found no clues regarding the identity of the burglar. Then, in July 1979, approximately ten months after the burglary, Deputy Blunschi talked with Mrs. Sue Newman King, the wife of Mrs. Meredith's son by a previous marriage. Mrs. King told Deputy Blunschi that sometime prior to Christmas in 1978 that Mrs. Meredith had brought two suitcases filled with silverware and china, as well as boxes containing other items, to the Kings' grocery store in Frogmore. At this time, Mrs. Meredith told Mrs. King she *714 wished to give the articles to her children by a previous marriage as Christmas presents, thereby avoiding the necessity of "splitting them with J. V.'s kids".
Mrs. King further stated that in February 1979, following a shooting incident between her husband and the defendant, Mrs. Meredith became concerned that officers might search her house. To avoid the detection of five guns she had hidden in a closet behind the refrigerator, she asked her son and his wife (Mrs. King) to come get them and to take them to the home of Norville Box in Natchez, Mississippi. In compliance with the request, they removed the three rifles, while Mrs. Meredith removed two pistols and a pendulum clock from the closet. The defendant was not at home when this incident occurred. In fact, upon being notified that someone was taking guns out of his house, the defendant called the police. However, they found none of the defendant's guns had been taken.
Shortly after the guns were removed, Mr. and Mrs. Beard, Mrs. Meredith's parents, travelled to the Kings' grocery to get the other articles. They took these items to Mrs. King's father's home in Ferriday. In March 1979, Mrs. King's brother, Mr. Newman, helped the Beards load up these items again. They then transported the articles to some unknown location and, to this day, they have not been recovered.
Once Mrs. King told her brother, Mr. Newman, a medically retired Memphis policeman, of her involvement, he advised her to notify the authorities. She did so, and after making these disclosures, Mrs. King accompanied Deputies Blunschi and Toler to Natchez in an effort to retrieve the stolen guns. The officers searched her van before sending her to the Box residence to get the guns while they waited at the Ramada Inn. She returned thirty minutes later with the three guns which matched the serial numbers and descriptions of those taken from the Thompson home.
Both Mrs. King and Mr. Newman gave videotape statements implicating Mrs. Meredith in the Thompson burglary. In July 1979, both Mrs. Meredith and the defendant were arrested for simple burglary of an inhabited dwelling.[1]
At trial the state put on quite a number of witnesses to bring forth the above facts. Additionally, the state attempted to link a truck seen by Deputy Delhoste parked outside the Thompsons' home the afternoon of the burglary with the defendant. On cross-examination, the defendant explained he had had such a truck, but it had been sold prior to the burglary to a fellow worker.
After hearing all the testimony the jury, by a vote of ten to two, found the defendant guilty of simple burglary of an inhabited dwelling. On appeal, the defendant urges five assignments of error as grounds for reversal of his conviction and sentence.
Defendant contends that the trial judge erred in admitting Mrs. Meredith's hearsay statement which implicated him in the crime. The statement was made by Mrs. Meredith to her daughter-in-law, Mrs. King, and was an explanation of how she was involved in the burglary. The statement which Mrs. King testified that Mrs. Meredith made to her was as follows: "J. V. had got her [Mrs. Meredith] drunk and told her to go in and take the stuff and he sat outside."
The statement was hearsay, as it was testimony in court of a statement made out of court, and was offered as an assertion to show the truth of the matters asserted therein. Its value rested entirely on the credibility of the out-of-court asserter, Mrs. Meredith, who was not present to testify. State v. Martin, 356 So.2d 1370 (La. 1978). Thus, Mrs. King's in-court testimony of what Mrs. Meredith said was to show the truth of the matter therein asserted, namely, that J. V. joined in the conspiracy with his wife to burglarize their neighbor's home.
*715 The state, acknowledging the hearsay nature of the statement, nevertheless contends that it is admissible under the co-conspirator exception.
According to R.S. 15:455:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
In State v. Dupree, 377 So.2d 328 (La. 1979), we explained these requirements:
"Before a co-conspirator's declaration may be introduced under this exception, a prima facie case of conspiracy must have been established and it must be shown that the declaration was made in furtherance of the common enterprise and during its continuation. [cites omitted] Introduction of a hearsay declaration without fulfillment of these requisites violates both the statute which prohibits the admission of hearsay evidence not falling within any exception to the rule, La.R.S. 15:434, and the constitutional guarantee of an accused's right to confront and cross-examine the witnesses against him. [cites omitted]"
With these principles in mind, we conclude that the hearsay declaration of Mrs. King was incorrectly admitted in evidence.
To begin with, it was the state's obligation to establish a prima facie case of conspiracy and, in this endeavor, they failed. As may be observed from the detailed recitation of evidence set forth in this opinion, there is, except for the hearsay statement of Mrs. Meredith, no showing whatsoever of the defendant's involvement in the burglary. The best of the evidence to show a conspiracy is as follows: (1) The defendant was Mrs. Meredith's husband and should have known what was going on in his own home. We are unable to speculate to that extent. (2) The defendant was present in the Thompson home after the burglary, but then, both Merediths were there at the request of Mrs. Thompson after she discovered that her home had been burglarized. (3) The defendant may have had something to do with the disappearance of the pipe, as he was in and out of the Thompson home during the police investigation. However, in this connection, it should be pointed out that Mrs. Thompson did not discover the pipe's disappearance until well after the defendant's departure, and even this evidence, at best, is equivocal. During the time interval involved, both of the Merediths had been alone in the Thompsons' kitchen and, obviously, either one of them could have disposed of the pipe. Again, we find this speculative as to the defendant's involvement in the burglary. (4) That Mrs. Meredith could not possibly have acted alone in carrying out the quantity of thefts here involved and that the defendant, as her husband, was the most likely assistant. The evidence shows that Mrs. Meredith did not require defendant's help in disposing of the rifles and other items taken from the house when she feared they might be discovered by the police. In fact, when the defendant heard that guns were being taken from his home, he must have thought they were his own, as he called the police and when they arrived on the scene, they found that his guns had not been taken and were in the gun cabinet. One may likewise speculate that if the defendant was involved in the burglary, it should not have been necessary for Mrs. Meredith to ask others to help her dispose of the stolen goods. It is mere speculation to assume that defendant knew the articles stolen from the Thompson home were in his home.
Last, the trial judge relied upon the statement of Mrs. Meredith in order to establish that a prima facie case of conspiracy had been established.[2] This loses sight of *716 the fact that the prima facie case must first be established by separate admissible evidence before the hearsay statement is admitted, and it was wrong for the trial judge to utilize the statement to supply a prima facie case. State v. Millet, 356 So.2d 1380 (La.1978).
There is an additional reason which the trial judge could have utilized to exclude the statement. The statement was not made in furtherance of the common enterprise or during its continuation. The burglary occurred on September 30, 1978 and the statement by Mrs. Meredith to Mrs. King was not made until after the February 1979 shooting incident between the defendant and Mrs. Meredith's son. The conspiracy's prime objective, the theft of the Thompsons' possessions, had been completed months earlier. Even if the renewed efforts at concealment of the rifles brought about by the shooting incident, can be regarded as a continuation of the conspiracy, the comment of Mrs. Meredith cannot be construed as a furtherance of the common enterprise. If anything, Mrs. Meredith's statement which, essentially, was a confession of guilt, would directly impede the common enterprise. State v. Dupree, supra.
Without the statement, we are of the opinion that no rational trier of fact could have found the defendant guilty of simple burglary of an inhabited dwelling. Unless the defendant is regarded as a co-conspirator with his wife and, as such, fully responsible for her actions, R.S. 15:455; State v. Kimble, 375 So.2d 924 (La.1979), there is no evidence of the essential elements of intent and unauthorized entry by the defendant.
At the risk of being redundant, when the hearsay statement of Mrs. Meredith is excluded, only the following facts could conceivably be utilized against the defendant: The defendant was home when the burglary occurred; his wife had a role in the burglary; an iron pipe disappeared while the defendant was helping his neighbor; guns were found in a closet behind his refrigerator, and a truck similar to defendant's was seen at the house. Without the hearsay statement of Mrs. King, these facts fall far short of proving a conspiracy.
On the other hand, the following facts exculpate the defendant: He was merely helping his neighbors after the burglary; he was never seen by any witness with any of the goods (Mrs. Meredith told Mrs. King she wanted her children to get the goods); he was not present when the stolen guns were moved from his house and, in fact, called the police because he believed his guns were being taken; there is conflicting testimony over how many people it took to move the refrigerator; and he never received any of the spoils of the burglary.
*717 Where the state's entire theory of the case is predicated upon the defendant's guilty by association with an alleged co-conspirator (his wife), proof beyond a reasonable doubt that such a conspiracy existed should be required. Even considering the evidence in a light most favorable to the prosecution, no rational trier of fact could have found the defendant guilty of conspiracy beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

CONCLUSION
We find that a prima facie case of conspiracy had not been proven when the trial court admitted the hearsay evidence of a co-conspirator. Also, that statement was not made in furtherance of the crime. Thus, the statement, "J. V. had got her drunk and told her to go in and take the stuff and he sat outside", was improperly admitted.
Furthermore, the facts absent this statement do not show the defendant was guilty of a conspiracy. Finally, no facts are presented that convince us the defendant did the crime on his ownthere was no intent nor unauthorized entry proven against this defendant.
Thus, we reverse the defendant's conviction and sentence, and order the defendant discharged.
REVERSED.
NOTES
[*] Judges J. B. Foret, P. J. Laborde and Jimmy M. Stoker of the Third Circuit Court of Appeal participated in this decision as Associate Justices Ad Hoc joined by Chief Justice Dixon and Associate Justices Marcus, Blanche and Watson.
[1] Mrs. Meredith's conviction for attempted simple burglary of an inhabited dwelling was affirmed by this Court on June 23, 1981. State v. Meredith, 400 So.2d 580 (La.1981).
[2] Trial transcript of trial judge's finding of a prima facie case of conspiracy:

"Judge:
"On that occasion. You, yourself, have mentioned the iron pipe episode tied directly to Mr. Meredith. Then in addition to that ... of course, I've lost my train of thought now. I knew what I was going to say till you interrupted me. And following through, in addition to that, of course, the ... one of the things that pops into my mind that ties directly into Mr. Meredith, is the fact that the weapons were found, at one time, in his house ... in his home ... behind the icebox, which, of course, the space was there as corroborated by Mr. Oxley. Therefore it's conceivably believable that things in his home ... if somebody wanted to believe that could have been under his dominion. There are counter arguments to that, I'll admit, and... but I'm adding it piece by piece and bit by bit ... the statement of Mrs. King, as I appreciate that she is going to testify to and the one that I just read out of here, that she was told that J. V. and Routh Lee took the material ... the fact that ... well, of course, there's overwhelming proof of the fact that there was a burglary ... there's overwhelming proof of the fact that ... it seems to me... that Mr. Meredith's wife was intimately involved in it. The only question, as I see it, is whether Mr. Meredith had anything to do with and these things that I say establish I think at least a prima facie case tieing him into it. Now, as to whether the Jury will accept that on ... as proof of guilty beyond reasonable doubt is something else and ... but giving the record and the totality of the circumstances here, together with those things, that specifically tie him into this, and the statement of Mrs. King, if believed, that one of the co-conspirators told her that he was involved in it, I think it is reasonable to assume that a prima facie case has been made, so for that reason I would allow the State to introduce the ... any statement that Mrs. King may have made."