## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**04-42**

**STATE OF LOUISIANA**

**VERSUS**

**VERNON LEON COX**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C 1092
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***
**JOHN B. SCOFIELD**
**JUDGE**
**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Michael G. Sullivan, and John B. Scofield, Judges.[*]

**CONVICTION SET ASIDE; SENTENCE VACATED;**
**REMANDED FOR A NEW TRIAL.**

**Karen G. Arena**
**Louisiana Appellate Project**
**110 Veterans Blvd., #222**
**Metairie, LA 70005**
**Counsel for Defendant/Appellant:**
    **Vernon Leon Cox**

**Van H. Kyzar**
**District Attorney, 10th JDC**
**Steven D. Crews, Asst. District Attorney**
**P. O. Box 838**
**Natchitoches, LA 71458-0838**
**Counsel for Appellee:**
    **State of Louisiana**

---

[*]Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

SCOFIELD, Judge.[1]

On January 6, 2000, the Defendant, Vernon Cox, and co-defendant, Elbertine Demery Sykes, were charged by grand jury indictment with one count of first degree murder, a violation of La.R.S. 14:30. The Defendant entered a plea of not guilty on January 21, 2000. At a hearing held October 18, 2002, the State orally moved to amend the bill of indictment to charge the Defendant with second degree murder, a violation of La.R.S. 14:30.1. The court accepted the amendment.

In a separate proceeding, Elbertine Sykes was charged as a principal to second degree murder, a violation of La.R.S. 14:24 and La.R.S. 14:30.1. Mrs. Sykes was tried in a jury trial which began on July 15, 2002. On July 18, 2002, she was found guilty of second degree murder and sentenced to life imprisonment. Her conviction and sentence were affirmed by this court in *State v. Sykes*, 03-397 (La.App. 3 Cir. 10/8/03), 857 So.2d 638, *writ denied*, 03-3429 (La. 4/2/04), 869 So.2d 875.

The Defendant's jury trial began on March 17, 2003. On March 19, 2003, the jury returned a verdict of guilty as charged. A Motion for New Trial was filed on July 11, 2003, and denied at a hearing held September 12, 2003. On the morning he was to be sentenced, September 26, 2003, the Defendant, *pro se*, filed a Motion in Arrest of Judgment, which the trial court denied. The Defendant was then, immediately, sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence. Defense counsel objected to the sentence and filed a Notice of Appeal in open court.

---

[1]Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

## FACTS:

The victim of the homicide was William Sykes, the husband of Elbertine Sykes, their having been married since March of 1998. The Defendant had previously been married to Mrs. Sykes. Vivian Cahee, the Defendant's twin sister, testified that in early 1999, the Defendant had lived with her in Fresno, Texas, and that in April of that year, Mrs. Sykes had visited the Defendant in Ms. Cahee's Texas home. Ms. Cahee indicated that during Mrs. Sykes' stay, the Defendant and Mrs. Sykes had become amorous and Mrs. Sykes had referred to the Defendant as her husband. Ms. Cahee testified that the Defendant told her he was still in love with Mrs. Sykes and the two were going to get back together.

At some point early in 1999, the Defendant moved out of Ms. Cahee's Texas residence. In June of 1999, he called her from Alexandria, Louisiana, and told her that Elbertine Sykes wanted him to kill her husband, William. Ms. Cahee testified that the Defendant was upset by Mrs. Sykes' request.

William Sykes reportedly went hunting with an unidentified nephew at 6:00 a.m. on November 10, 1999. The next day, November 11, 1999, Mrs. Sykes reported her husband missing. Mr. Sykes was found dead on Lime Kiln Road in Natchitoches Parish on November 13, 1999. The Defendant was convicted of killing Mr. Sykes.

Defendant appeals arguing two assignments of error:

1. The trial court committed reversible error in allowing inadmissible hearsay evidence to be presented to the jury.

2. The evidence is insufficient to sustain the verdict.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, the Defendant contends the trial court committed reversible error in allowing inadmissible hearsay evidence to be presented to the jury. The Defendant specifically contends that the out of court statement Elbertine Sykes made to Detective Michael Wilson on November 18, 1999, was hearsay and its being admitted into evidence violated his constitutional right to confront and cross-examine the witnesses against him. Additionally, he asserts that he participated in no conspiracy with Sykes; that her statement was not made in furtherance of any conspiracy; and therefore, he argues, the statement was not admissible under the co-conspirator exception to the hearsay rule as set out in La.Code Evid. art. 801(D)(3)(b), which provides in pertinent part:

> **D. Statements which are not hearsay.** A statement is not hearsay if:
>
> . . . .
>
> **(3) Relational and privity admissions.** The statement is offered against a party, and the statement is:
>
> . . . .
>
> (b) A statement by a declarant while participating in a conspiracy to commit a crime or civil wrong and in furtherance of the objective of the conspiracy, provided that a prima facie case of conspiracy is established . . . .

The State filed a motion asking the trial court to adopt the ruling it made in Elbertine Sykes' trial holding that a prima facie case of conspiracy was proven. Court minutes in the case before us from October 18, 2003, read in pertinent part as follows:

> Mr. Crews advised court that also pending was a Motion for the Court to adopt the ruling the Court made about primae [sic] facie conspiracy in the Elbertine Sykes' case and to adopt it in this case since the evidence is the same, this co-defendant, same charge, same action.
> Mr. Crews stated he doesn't think Mr. Brewer opposes that Motion either.

3

We find there is no clear expression in the record that Defense counsel agreed that the evidence in the Elbertine Sykes' trial could establish a prima facie case of conspiracy in the case at hand. The record contains a rather vague minute entry suggesting that counsel for Defendant "responded negatively" when this issue was raised but whatever that means, it does not constitute a stipulation or agreement by counsel that the ruling in Mrs. Sykes' trial could be adopted in this case.

In *State v. Menard*, 02-1182, pp. 33-34 (La.App. 3 Cir. 5/7/03), 844 So.2d 1117, 1137, the court observed:

> Louisiana Code of Evidence Article 801(D)(3)(b) requires not only the establishment of a prima facie case of conspiracy, but also a finding that the statement was made while participating in the conspiracy and in furtherance of the objective of the conspiracy. Such findings are impossible without knowing the substance of the statements themselves and the context within which they were made.

*See also State v. Dupree*, 377 So.2d 328 (La.1979). Clearly then, before such a statement can be admitted into evidence, the State has to establish by competent evidence (1) a prima facie case of conspiracy, (2) that the statement sought to be introduced was made while the conspiracy was ongoing, and (3) that the statement itself was made in furtherance of the conspiracy.

The State argued that Mrs. Sykes' statement was admissible for the following reasons:

> [T]he statement was the statement of Elbertine Sykes given to Detective Michael Wilson, which in fact implicated Vernon Cox, but the basis for introducing the statement is, Number 1, it contained information Elbertine said that this was supposed to be a robbery that resulted in an accidental killing. And the information she provided is exactly consistent with the information the defendant gave to another witness who is going to be testifying, Kenny Rhodes, same information. It was . . . supposed to be a robbery, not supposed to be a murder. But of course, under our law, that doesn't matter, but obviously the co-conspirators did not know that, and it's my position that that's a continuation of the conspiracy, where conspiracy was to play this off as a robbery that went bad for an armed robbery as opposed to a murder.

4

And that way it is consistent. . . . In this case, there is information in there about a gun that was obtained from Jo Ann Williams, which is where Vernon Cox was living admittedly [sic]. That there is no way Elbertine Sykes could have possibly known that, except from information supplied by Vernon Cox. And for that reason we've ask that the statement be introduced.

Defense counsel made the following argument regarding the admissibility of Mrs.

Sykes' statement:

Your Honor, as I indicate in chambers, I vehemently object to the introduction of this statement. I think uh....uh...first of all, let me note for the record, that the Court's determination as to the conspiracy that was made in the Elbertine Sykes case, uh. . . and it is my understanding that that is applied uh, to the case of Vernon Cox. Uh. . . secondly, more importantly, I think it is a clear violation of the confrontation clause, uh...to introduce this statement without the ability to confront and cross examine her. . .I think it's a clear violation. . .of her unconscious constitutional rights, and the U.S. Constitution and the Louisiana Constitutional. Now the Court has informed me that I would be able to introduce portions of her trial testimony. And I want to address that. One of the concerns I have is Elbertine Sykes has made, as many as I can tell, three (3) or four (4) different statements. And each of them is inconsistent with the remainder of them. So, I think the statement in and of itself is a question of reliability. I understand that Mr. Crews believes it's corroborated by the testimony of Kenney Rhodes, which in turn, is a question of reliability. So, I guess my major concern, and my major objection is that it clearly violates the right to confrontation and cross examination.

The court then made the following ruling (emphasis ours):

[M]y opinion on this is the same as it was in that case concerning the admissibility of statements of co-conspirators, and this is that *they are admissible uh, to show evidence of a conspiracy in the intent to further a conspiracy*. So, I will permit the statement to be presented to the jury. Uh...I will permit the defense to present appropriate parts of the testimony of Elbertine Sykes by way of her trial transcript, that uh...that are inconsistent with that...uh, with the statement that the State intends to offer.

As stated above, the statement of a co-conspirator is admissible under La.Code

Evid. art. 801(D)(3)(b), only after the State first proves a prima facie case of

conspiracy and that the statement was made in furtherance of the objective of the

"common enterprise and during its continuance." *State v. Dupree*, 377 So.2d 328,

5

330 (La.1979). "A prima facie case of conspiracy is presented when the state introduces evidence which, if unrebutted, would be sufficient to establish the facts of the conspiracy. *State v. Nall*, 439 So.2d 420, 425 (La.1983)." *State v. Lobato*, 603 So.2d 739, 746 (La.1992).

> Before a co-conspirator's declaration may be introduced under this exception, a prima facie case of conspiracy must have been established and it must be shown that the declaration was made in furtherance of the common enterprise and during its continuation. *State v. Carter*, 326 So.2d 848 (La.1975); *State v. Kaufman*, 331 So.2d 16 (La.1976); *State v. Hodgeson*, 305 So.2d 421 (La.1975); *State v. Michelli*, 301 So.2d 577 (La.1974); Comment, The Co-Conspirator Exception to the Hearsay Rule The Limits of Its Logic, 37 La.L.Rev. 1101 (1977); C. McCormick, *Evidence*, § 267 (2d ed. 1972). Introduction of a hearsay declaration without fulfillment of these requisites violates both the statute which prohibits the admission of hearsay evidence not falling within any exception to the rule, La.R.S. 15:434, and the constitutional guarantee of an accused's right to confront and cross-examine the witnesses against him. La.Const. Art. 1, s 16; *State v. Michelli*, 301 So.2d 577 (La.1974); cf. *State v. Carter*, 326 So.2d 848 (La.1975).

*Dupree*, 377 So.2d at 330.

A trial court's determination as to the admissibility of such evidence will not be overturned absent clear error. *State v. Lobato*, 603 So.2d 739 (La.1992). Here, there are no facts in the record establishing any of the requisites of La.Code Evid. art. 801(D)(3)(b). It appears the trial court assumed that since a prima facie case of conspiracy had been proven in the Elbertine Sykes case, that finding could simply be adopted in this case. There was no stipulation between the State and the Defendant that the Sykes ruling could be transferred to this case. The record contains no clear expression that the Defendant agreed to this. We find no proof that a prima facie case of conspiracy has been made in this case and, consequently, none of the other requirements of article 801 have been met either.

Additionally, we find the admission of the statement also violated the Confrontation Clause. U.S. Const. amend. VI; La.Const. art. 1, § 16. At the time of

the trial in this case, *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531 (1980), provided that the Confrontation Clause was not violated if the evidence at issue fell within a firmly rooted exception to the hearsay rule or if there were particular indicia of reliability. Recently, in *Crawford v. Washington*, __ U.S. __, 124 S.Ct. 1354 (2004), the United States Supreme Court abrogated its decision in *Roberts*, indicating that reliability alone was insufficient to satisfy the Confrontation Clause.[2] The court held the following:

> Where testimonial evidence is at issue . . . the <u>Sixth Amendment</u> demands what common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, *it applies at a minimum to prior testimony* at a preliminary hearing, before a grand jury, or *at a former trial; and to police interrogations*. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed.

*Id*. at 1374 (footnotes omitted)(emphasis added).

We must also address *Crawford's* applicability here given the Supreme Court's decision in that case was rendered after the case before us now was tried and decided. Even though the decision in *Crawford* is very recent, other courts have already considered its application to cases which had been tried before *Crawford* was decided. In *U.S. v. Avants*, 367 F.3d 433(5th Cir. 2004), the Fifth Circuit applied the *Crawford* test even though *Crawford* was decided after the conclusion of the trial in *Avants*. Other courts have also held *Crawford* to be applicable even though it was decided after the trial in those cases. *See, e.g., State v. Herrmann*, 679 N.W.2d 503, 2004 SD 53 (S.D. 2004); *State v. Pullen*, 594 S.E.2d 248 (N.C.App. 2004); *Cooper v. McGrath*, ___ F.Supp.2d ___, (N.D.Cal. 2004)[3]; and *Moody v. State*, 594 S.E.2d 350 (Ga. 2004).

---

[2]In *Crawford* the state sought to introduce a recorded statement the defendant's wife had given in a police interrogation.

[3]This case can be found by using Westlaw citation 2004 WL 844052.

The State argues that *Crawford* is not controlling here because the statement at issue in that case was not made to further a conspiracy. The State further contends that the holding in *United States v. Inadi,* 745 U.S. 387, 106 S.Ct. 1121 (1986), is the law to be applied here because the statement at issue in that case was made in the furtherance of a conspiracy.[4] We disagree. The spectrum of *Crawford* is much broader than as portrayed by the State. *Crawford* teaches that the right of confrontation applies to *all* "testimonial statements against the accused". The Court goes on to expressly state that testimonial statements would include those made during "police interrogations." Indeed, the statement at issue in *Crawford* was a statement made during a police interrogation. Consequently, the statement of Mrs. Sykes, given during a police interrogation, falls squarely within the reach of *Crawford*.

The State argues further that *Inadi* is still the law because it was not expressly overruled by the Court in *Crawford*. Again, the State fails to give cognizance to the breadth of *Crawford* and its application to all testimonial statements, regardless of the purpose for which the statement may have been given, including the purpose of furthering a conspiracy. We would not expect the Supreme Court to specifically address all prior cases wherein the admissibility of testimonial statements, in a multiplicity of differing circumstances, might have been at issue.

Finally, the State contends that Defendant waived his right to object to the introduction of the Sykes statement because the court had offered him the right to subpoena Sykes as a witness. This begs the issue. Calling Sykes as a witness, in and of itself, would hardly render the statement admissible. Defendant should not be required to call Mrs. Sykes as a witness simply to facilitate the State's introduction of

---

[4]The thrust of the *Inadi* holding is that the confrontation clause does not require the prosecution to show unavailability as a prerequisite to the admission of statements of non-testifying co-conspirators

evidence against the Defendant. Moreover, there could be a whole host of reasons why Defendant would not want to call Mrs. Sykes as a witness. [5] Simply stated, if the State needed to have Mrs. Sykes' testimony to enable the State to introduce the statement into evidence, the State could have called Mrs. Sykes as a witness.

In *Crawford*, the Supreme Court expressed no opinion regarding whether a harmless error analysis should be applied to such violations. *Id*. at n. 1. In all of the cases wherein the ruling in *Crawford* has been relied upon, the courts employed the harmless error analysis. Additionally, the admission of hearsay evidence is generally subject to the harmless error analysis. *State v. St. Marie*, 97-0168 (La.App. 3 Cir. 4/18/01), 801 So.2d 424.

> Confrontation errors are subject to a *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) harmless error analysis. *See Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438; *State v. Hawkins*, 96-0766 (La.1/14/97), 688 So.2d 473, 478; *State v. Wille*, 559 So.2d 1321, 1332 (La.1990).

>> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

> *Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

*State v. Robinson*, 01-273, pp. 9-10 (La. 5/17/02), 817 So.2d 1131, 1137.

---

[5] At the trial, the Defendant refused the court's offer to call Mrs. Sykes as a witness, contending that it would be a vain and useless exercise because her case was still pending on appeal and, therefore, she would plead the 5th amendment were she called to testify. Because we find the statement to be inadmissible on other grounds, we need not address the speculative issue of Mrs. Sykes' 5th amendment rights.

Mrs. Sykes' statement was important in this case. It corroborated the testimony of three State witnesses on critical points of the case. First, in her statement, Mrs. Sykes stated that the Defendant admitted that he killed Mr. Sykes while robbing him. The statement corroborated the testimony of Kenny Rhodes, who testified at trial that the Defendant told him he shot a man while robbing him. Mr. Rhodes did not testify as to when or where the Defendant allegedly killed a man, nor did he testify that the Defendant told him the identity of the man he killed.

Second, the portion of Mrs. Sykes' statement wherein she said she saw the Defendant driving her husband's truck on the night of November 10, 1999, the day her husband became missing, corroborated the testimony of Cathy Johnson, who testified that she saw the Defendant driving a white truck. Ms. Johnson was not asked to identify the white truck as that of the victim and she was not asked on what day her observation occurred.

Finally, Mrs. Sykes' statement also corroborated Jo Ann Williams' testimony that the Defendant knew Williams had a twenty-gauge shotgun and where she kept it. J. B. Peace testified that Ms. Williams had a twenty-gauge shotgun that was missing, but he did not testify when the gun disappeared.

There were no eyewitnesses to the murder of William Sykes. Additionally, there was no physical evidence linking the Defendant to the crime. The statement Elbertine Sykes made to Detective Wilson on November 18, 1999, connected very important loose ends in this case and was the among the strongest evidence presented by the State.

Considering the foregoing, we find that admission of the statement was not harmless. As a result, the Defendant's conviction must be set aside, his sentence vacated, and the case remanded for a new trial.

10

Under the circumstances, we pretermit the discussion of Defendant's Assignment of Error Number Two.

**DISPOSITION:**

The Defendant's conviction is set aside, his sentence vacated and the case is remanded to the trial court for a new trial.

**CONVICTION SET ASIDE; SENTENCE VACATED; REMANDED FOR A NEW TRIAL.**