456 So.2d 1021 (1984)
STATE of Louisiana, Appellee,
v.
Vincent ORLANDO, Appellant.
No. 16,113-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
Rehearing Denied September 21, 1984.
Writ Denied November 26, 1984.
Charles J. Yeager, Alexandria, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Edwin O. Ware, III, Dist. Atty., R. Greg Fowler, Asst. Dist. Atty., Alexandria, for appellee.
Before PRICE, C.J., HALL, J., and ENOS C. McCLENDON, J. Pro Tem.
PRICE, Chief Judge.
Vincent Orlando was indicted by a Rapides Parish Grand Jury for committing first degree murder of Harold Austin on January 17, 1981. After the trial and conviction of a co-defendant, Avery W. "Pete" Moore, resulted in substantial publicity, the Ninth Judicial District Court ordered a change of venue to the Thirty-Seventh Judicial District Court for Caldwell Parish. Defendant was subsequently tried and convicted for second degree murder.
*1022 On this appeal, defendant has assigned 23 assignments of error which create the following general issues:
(1) The allegedly improper references by the prosecution to the law of conspiracy during voir dire;
(2) The allegedly improper references to inadmissible hearsay evidence by the prosecution during the opening statement and whether hearsay evidence was improperly admitted at trial;
(3) The alleged deprivation of defendant's constitutional right of confrontation of witnesses whose out-of-court statements were admitted into evidence;
(4) The allegedly improper overruling of defendant's motion to suppress pretrial identifications;
(5) The effect of pretrial forensic hypnosis upon in-court testimony of a witness; and
(6) The sufficiency of the evidence for conviction.
FACTUAL BACKGROUND
On January 17, 1981, at about 11:00 p.m. the body of Harold Austin was found in a ditch alongside Burma Road in rural Rapides Parish near Tioga. He had been shot one time in the back only a short time before being found. Austin was the night manager of the Shop-Mor convenience store in Tioga. He had apparently been abducted from the Shop-Mor store approximately 45 minutes prior to the time he was found.
On the night of this incident, Rapides Parish Sheriff's Deputy Bruce Vandehoeven, while on routine patrol, noticed a gold and white Buick automobile parked parallel to and near the front door of the Shop-Mor store at about 10:15 p.m. He drove into the parking lot of an adjacent "Cotton Patch" restaurant to better observe this vehicle without being seen. He saw a person other than Austin locking the front door to the Shop-Mor store. This person then ran to the Buick automobile and entered the right rear door. Vandehoeven observed one person, believed to be a woman, in the front seat with the driver, and three persons in the rear seat.
He followed the car for some two and a half miles during which time he radioed a request for a vehicle identification of the car and for a check of the Shop-Mor premises. He was advised the vehicle was registered to Avery Moore of Tioga. After being advised that the Shop-Mor premises appeared to be secure, Vandehoeven terminated his surveillance of the car. The car was at this time proceeding on a route which would lead to the Burma Road in the area where Austin's body was found.
Vandehoeven drove back by the Shop-Mor to further check the premises. He found Austin's automobile parked at the far end of the parking lot with the driver's door open. At the time he went off duty at 11:00 p.m. he informed the dispatcher at the Tioga substation of his observations.
After the discovery of Austin's body Vandehoeven was called back to the Tioga sheriff's substation to give information to the investigating officers. He gave a statement generally depicting the facts outlined above. In the statement he identified two persons with whom he was familiar as being in the suspected automobile. According to his statement Michael Ebey was the person seen locking the door and Tommy Wren was the person seated in the left rear position of the car. Following up on this information, the investigating officers, including Vandehoeven, proceeded to the residence of Ebey to question him. Ebey and his roommate, Wren, were asleep when the officers arrived. Vandehoeven, after noticing that Ebey had a full beard and a cast on his leg, advised the other officers he was mistaken in his identify of Ebey as the person he had seen locking the Shop-Mor door.
Further investigation disclosed Avery Moore had made statements to witnesses some two weeks prior to this incident exhibiting a desire to rob and kill the victim. This information along with the vehicle registration led officers to suspect that Moore was the driver of the subject vehicle and that the person seen locking the ShopMor *1023 door was defendant Orlando, known to be Moore's roommate and frequent companion. The morning following the murder, Vandehoeven was shown photographs of Moore and Orlando and identified Moore as the driver and Orlando as the person locking the door. The following day Moore and Orlando were arrested in Houston.
On January 29, 1981, Vandehoeven was shown a photograph lineup and he again identified Moore as the driver, defendant as the right rear passenger, and Wren as the left rear passenger. In an attempt to assist Vandehoeven to identify the front right passenger who he believed to be a woman, Vandehoeven was hypnotized by a state police expert on March 6, 1981. This procedure did not result in any change in Vandehoeven's ability to identify persons in the automobile. See State v. Wren, 425 So.2d 756 (La.1983).
On trial, the state offered the testimony of witnesses to whom the co-defendant, Moore, had made statements indicating he was thinking of robbing and killing Austin some two weeks prior to the date of his death. This evidence was permitted over the objection of defendant under the provisions of La.R.S. 15:455, as being a statement of a co-conspirator.
The subject testimony was given by Karen Weems and her mother, Margaret Weems, of Tioga. The evidence shows that Moore, accompanied by defendant Orlando, drove from their residence in Houston to Tioga to pick up a government check which came to Moore at a Tioga address. This was on a date approximately two weeks prior to the Austin murder. Karen Weems testified that her mother, Margaret, who was Moore's niece, received a call from Moore that his car had broken down in front of the Shop-Mor store. She testified her mother sent her to pick up Moore and Orlando and bring them to her residence where they stayed for two days during the time repairs were made to Moore's car.
Karen testified that Moore asked her unusual questions about Harold Austin and the Shop-Mor store, such as the time of closing and how much money Austin would be carrying. She testified that Moore on one occasion during this stay declared, "I bet he has alot of money, I'd like to shoot the SOB and throw him in the road ditch." She testified Orlando was not present when these discussions took place. Margaret Weems testified that she was present and heard the statements made by Moore.
This evidence was such a vital link in the chain of circumstantial evidence on which the conviction of defendant was obtained that the correctness of its admissibility is the crucial issue raised in the numerous assignments of error made by defendant and as our conclusions on this issue are dispositive of this appeal, we find it unnecessary to discuss the remaining assignments of error.
Defendant attacks the admissibility of this evidence on the basis that it is hearsay; that the state has not laid the necessary foundation for its admission under any exception to the hearsay rule; and as the declarant Moore was not present at the trial, defendant was deprived of the right of confrontation and cross-examination of the person whose statements are being used against him in violation of the Sixth Amendment to the U.S. Constitution. For the purpose of directly reaching the dispositive issue of whether defendant's constitutional right of confrontation has been violated, we will assume that the subject evidence would otherwise be admissible as the statement of a co-conspirator under La.R.S. 15:455, which provides:
Each co-conspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his co-defendant. But to have this effect a prima facie case of conspiracy must have been established.
Even though a defendant is not charged with the inchoate crime of conspiracy but rather as a principal to a substantive *1024 offense, reference to the law of conspiracy is nevertheless relevant and permissible to permit the state to utilize the evidentiary rules found in La.R.S. 15:455. State v. Gutter, 393 So.2d 700 (La.1981).
Therefore without further examination of the correctness of the trial court's determination that the state had made a prima facie showing of a conspiracy between the declarant, Moore, and defendant, Orlando, which would provide for admissibility of this evidence under La.R.S. 15:455, we shall focus our attention on the question of whether defendant's constitutional right of confrontation has been violated.
The Sixth Amendment to the Federal Constitution requires "that in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Art. 1, § 16, of the Louisiana Constitution of 1974, provides that "an accused is entitled to confront and cross-examine the witnesses against him...." The Fourteenth Amendment to the Federal Constitution makes the federal confrontation clause obligatory on the states. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).
Defendant contends that the state did not present the hearsay declarant Pete Moore to testify at defendant's trial or show that his testimony was unavailable; therefore the admission of his hearsay declarations, even if permitted by an exception to the hearsay rule, violates the Sixth Amendment guarantee of the right of confrontation.
In California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), the Supreme Court defined the relationship of the hearsay rules and the confrontation clause as follows:
... While it may readily be conceded that hearsay rules and the Confrontation Clause are generally designed to protect similar values, it is quite a different thing to suggest that the overlap is complete and that the Confrontation Clause is nothing more or less than a codification of the rules of hearsay and their exceptions as they existed historically at common law. Our decisions have never established such a congruence; indeed, we have more than once found a violation of confrontation values even though the statements in issue were admitted under an arguably recognized hearsay exception. See Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The converse is equally true: merely because evidence is admitted in violation of a long-established hearsay rule does not lead to the automatic conclusion that confrontation rights have been denied.
Given the similarity of the values protected, however, the modification of a State's hearsay rules to create new exceptions for the admission of evidence against a defendant, will often raise questions of compatibility with the defendant's constitutional right to confrontation. Such questions require attention to the reasons for, and the basic scope of, the protections offered by the Confrontation Clause.
* * * * * *
Finally, we note that none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial. The concern of most of our cases has been focused on precisely the opposite situationsituations where statements have been admitted in the absence of the declarant and without any chance to cross-examine him at trial. These situations have arisen through application of a number of traditional "exceptions" to the hearsay rule, which permit the introduction of evidence despite the absence of the declarant usually on the theory that the evidence possesses other indicia of "reliability" and is incapable of being admitted, despite good-faith efforts of the State, in any way that will secure confrontation with the declarant.
Such exceptions, dispensing altogether with the literal right to "confrontation" and cross-examination, have been subjected *1025 on several occasions to careful scrutiny by this Court. In Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065 [13 L.Ed.2d 923] (1965), for example, the State introduced at defendant's trial the transcript of a crucial witness' testimony from a prior preliminary hearing. The witness himself, one Phillips, had left the jurisdiction and did not appear at trial. "Because the transcript of Phillips' statement offered against petitioner at his trial had not been taken at a time and under circumstances affording petitioner through counsel an adequate opportunity to cross-examine Phillips," 380 U.S., at 407, 85 S.Ct., at 1070, we held that its introduction violated the defendant's confrontation rights. Similarly, in Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318 [20 L.Ed.2d 255] (1968), the State introduced the preliminary hearing testimony of an absent witness, incarcerated in a federal prison, under an "unavailability" exception to its hearsay rules. We held that that exception would not justify the denial of confrontation where the State had not made a good faith effort to obtain the presence of the allegedly "unavailable" witness.
In a much later case, Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the United States Supreme Court further clarified the confrontation requirement:
The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference of face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant. [citations omitted]
* * * * * *
In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.
* * * * * *
The basic litmus of Sixth Amendment unavailability is established: "[A] witness is not `unavailable' for purposes of the ... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S., at 724-725, 88 S.Ct., at 1322.
Although it might be said that the Court's prior cases provide no further refinement of this statement of the rule, certain general propositions safely emerge. The law does not require the doing of a futile act. Thus, if no possibility of procuring the witness exists (as, for example, the witness' intervening death), "good faith" demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation. "The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness." California v. Green, 399 U.S., at 189, n. 22, 90 S.Ct., at 1951 (concurring opinion, citing Barber v. Page, supra). The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate.
The State maintains that it has met the requirements of Roberts in this instance by showing the probable unavailability of Moore's testimony and because this evidence possesses adequate indicia of reliability *1026 and falls within a firmly rooted hearsay exception as the statement of a co-conspirator.
The State contends that because Moore has been convicted of first degree murder and sentenced to capital punishment, he would in all probability exercise his right against self-incrimination under the Fifth Amendment if called to testify and that this is a sufficient showing that his testimony is unavailable. The State also contends if Moore had been required to exercise this privilege in the presence of the trial jury, this could have constituted grounds for a motion for a mistrial by prejudicing the defendant in the eyes of the jury.
The State further argues that its need for this relevant, probative evidence which has a high degree of reliability as a declaration against penal interest should outweigh the defendant's interest in a personal confrontation of the declarant accompanied by an opportunity for cross-examination.
While we understand the State's need for this evidence to add a motive for the killing of Harold Austin to the otherwise purely circumstantial evidence against defendant, we are constrained to hold that the State has not shown the unavailability of Moore's testimony as a predicate for admissibility as required by the prevailing jurisprudence.
... A witness is not unavailable for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial.

Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968).
A witness incarcerated in a parish facility is not "unavailable" for the purpose of satisfying the confrontation clause requirement in admitting evidence under a hearsay exception. State v. Smith, 400 So.2d 587 (La.1981). Nor is incarceration of a witness in a state proceeding in a federal prison sufficient to constitute a showing of unavailability. Barber v. Page, supra. In Barber the Supreme Court indicated that every reasonable effort must be made to obtain the witness's presence although it may appear to be an exercise in futility.
We cannot accept the State's argument that it was unnecessary to produce Moore at trial under the circumstances present here. No effort whatsoever was made by the prosecution to obtain Moore's presence at trial. The only evidence put on by the State in this regard was the testimony of Moore's trial and appeal counsel who testified that if Moore were called as a witness he would advise him to exercise his Fifth Amendment privilege not to testify. The attorney admitted that he had not consulted with Moore in this regard and that he could not say whether Moore would follow his advice.
Moore was being held by the state at the state penitentiary at Angola, awaiting disposition of his application for relief in the federal courts following affirmance of his death sentence in the state Supreme Court.[1] Therefore, he was under the control of state authorities and we can not perceive the state would have had any problem in obtaining his presence at trial had the prosecution properly made a request. Furthermore the state has not sought to show that unreasonable measures would have been required in order for the prosecution to obtain Moore's presence at trial.
Nor can we accept the State's argument that it would have been exposed to a mistrial if Moore had taken the stand and claimed the Fifth Amendment privilege in the presence of the jury. A determination of his willingness to testify or claim this privilege could have been made out of the presence of the jury by the trial judge.
There are a number of cases which have held that when the hearsay declarant is called as a witness and refuses to testify that unavailability has then been established. *1027 However, we find no cases where unavailability has been shown without requiring the witness to appear in court and claim the Fifth Amendment privilege. We therefore find that the admission of the declarations by Moore to Karen and Margaret Weems was a violation of defendant's right of confrontation guaranteed by Art. 1, § 16 of the Louisiana Constitution of 1974 and the Sixth Amendment to the U.S. Constitution.
There is no question that this evidence could not be found to be harmless error in this instance. La.C.Cr.P. Art. 921 provides "a judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." For guidance in the correct application of this article we refer to State v. Gibson, 391 So.2d 421 (La.1980) in which the Supreme Court ruled in part as follows:
Accordingly, this Court is no longer required by statute to reverse a criminal decision if there is any constitutional error in the proceedings below, and it is no longer authorized to reverse upon finding that there has been a miscarriage of justice. This Court constitutionally, however, still may not act as a surrogate jury; it is not free to substitute its determination of what the jury, in the absence of the error, would or should have decided in place of the jury's actual verdict.
For these reasons we conclude that the federal harmless error rule, as stated and applied in Chapman v. California, is the standard most compatible with this Court's view of its own criminal appellate jurisdiction. Whether there is a reasonable possibility that the constitutional error complained of might have contributed to the conviction is a question of law to which our appellate jurisdiction extends. Although the standard requires a reviewing court to consider the evidence in order to determine if there is a reasonable possibility that the error had prejudicial effect, it does not permit a court to substitute for the verdict its judgment of what the jury would or should have decided in the absence of error.
* * * * * *
The Chapman harmless error approach is also more consistent with the notion that all accused persons are entitled to a fair trial, even if guilty. Injudicious application of the harmless error doctrine tends "to shield from attack errors of a most fundamental nature and thus to deprive many defendants of basic constitutional rights." Harrington v. California, 395 U.S. 250, 257, 89 S.Ct. 1726, 23 L.Ed.2d 284, 289-90 (1969) (Brennan, J., dissenting). Our Court has recognized that absent reversal, certain legal practices may continue unabated. [State v.] Michelli, 301 So.2d [577] at 579 [(La.1974)]. The Chapman court pointed out that a state court may err by giving "emphasis, and perhaps overemphasis, upon the court's view of `overwhelming evidence,'" 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed. 705, 710 (1967).
When the subject evidence is examined in the light of the test laid down in Gibson we have no doubt the admission of this inadmissible evidence could have contributed to the conviction of the defendant. There can be no question but that the prior declaration by Moore evidencing an intent or desire by him to rob and kill the victim could have influenced the jury on the ultimate question of defendant Orlando's guilt or innocence. This is especially true in view of the lack of direct evidence of defendant's participation in the crime in this case.
We therefore find the admission of the statements made by the co-defendant Moore in violation of defendant's constitutional right of confrontation, was not harmless error. Consequently, the defendant's conviction and sentence must be reversed and the case remanded for a new trial.
REVERSED and REMANDED FOR A NEW TRIAL.
HALL, J., concurs with written reasons.
*1028 HALL, Judge, concurring.
The hearsay declaration by Moore to Weems was inadmissible because the state did not establish by independent evidence a prima facie case that a conspiracy existed between Moore and the defendant at the time the statement was made several weeks prior to the murder or that the statement was made in furtherance of the conspiracy. LSA-R.S. 15:434, 455. State v. Meredith, 403 So.2d 712 (La.1981); State v. Dupree, 377 So.2d 328 (La.1979).
NOTES
[1] See State v. Moore, 432 So.2d 209 (La.1983).