496 So.2d 1287 (1986)
STATE of Louisiana, Plaintiff-Appellee,
v.
Judith K. STRINGER and Donnie Hall, Defendants-Appellants.
No. CR85-1223.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1986.
Rehearing Denied November 26, 1986.
*1289 James S. Gravel, Gravel & Van Dyke, Alexandria, for defendants-appellants.
Rene Solomon, Asst. Atty. Gen., Baton Rouge, Dan B. Cornett, Dist. Atty., Jena, for plaintiff-appellee.
Before DOMENGEAUX, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
Donnie Hall and Judith K. Stringer Hall were charged by bill of information, along with James B. Nichols, James Lester Barron and Danny Barnes, with arson with the intent to defraud and conspiracy to commit arson with the intent to defraud, in violation of LSA-R.S. 14:26 and 14:53. The State alleges that they conspired to and did burn down coconspirator James B. Nichols' residence on May 29, 1983, with the intent to defraud the State Farm Insurance Company (State Farm). Donnie Hall, Judith Stringer Hall and James Nichols were scheduled for trial with Lester Barron and Danny Barnes as State witnesses. James Nichols failed to appear for trial and a bench warrant was issued for his arrest. Donnie Hall and Judith K. Stringer Hall were tried by jury and found guilty as charged on both counts. They were sentenced to serve five (5) years at hard labor and fined $5,000 on the arson charge and an additional two (2) years at hard labor on the conspiracy charge. The two sentences were to run consecutively. The Halls appeal urging that the trial court erred: (1) in allowing hearsay statements made by coconspirator James Nichols to Jimmy Dale Homan and Fire Marshall Don Fletcher to be admitted into evidence; (2) in allowing the State, while on redirect examination of their witness, to elicit evidence of other crimes committed by them; and, (3) in refusing their special jury instructions. We affirm the convictions.

FACTS
On May 29, 1983, the residence of James B. Nichols, a wood frame house in Jena, Louisiana, was destroyed by fire. An investigation by the State fire marshall's office determined the cause of the fire to be arson. Two plastic milk cartons found in the house were melted and still contained remnants of gasoline. Samples of gasoline and diesel fuel were also found throughout the house. The State alleges that all of the initially charged defendants conspired to set the house on fire to destroy it and *1290 thereby collect insurance proceeds from State Farm. The State specifically alleges that James Nichols hired Donnie and Judy Hall to burn the house for $10,000. The Halls paid Lester Barron $3,000 to actually torch the house, and Barron paid Danny Barnes $200 to drive him to the house and back to set the fire.
James Nichols was substantially in debt. Jimmy Dale Homan testified that Nichols approached him and asked him to burn the house for a fee. According to Homan, Nichols later changed his mind and told him that he had hired Judy and Donny Hall to burn the house. Lester Barron testified that he was approached by Judy and Donnie Hall wherein he agreed to torch the house for a total of $3,000 of which the sum of $1,500 would be paid when the fire was set and the remaining $1,500 would be paid when the insurance proceeds were collected. The house was insured by State Farm with limits as follow: $42,000 for total loss of the dwelling; $23,375 for loss of personal property; and, $12,750 for loss of use. Barron further testified that he had previously performed such torchings for Judy Stringer Hall's previous husband, Orville Stringer, who is now deceased. Orville Stringer and Donnie Hall were official members of Satan's Tramps, a motorcycle gang. Judy Hall was their bookkeeper and constant companion, although women were not allowed membership in Satan's Tramps. It was believed and urged by the State that Orville Stringer operated a fire-for-hire business with intent to defraud insurance companies. Within three months after Orville's death, Judy and Donnie Hall were married. The State alleges that Donnie and Judy Hall successfully continued operating Orville's fire-for-hire business through Satan's Tramps.

ASSIGNMENT OF ERROR ONE
The Halls contend that the trial court erred in admitting into evidence the hearsay statements made by James Nichols to Jimmy Dale Homan and Fire Marshall Dan Fletcher. Homan testified that Nichols initially offered to pay him to torch the house but later informed him that he had contracted with Donnie and Judy Hall to torch the house. During the pretrial hearings, the trial court ruled that the statements were admissible as exceptions to the heresy rule under LSA-R.S. 15:455, which provides:
"Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established."
Defendants contend that the State failed to prove that a prima facie case of conspiracy had been established prior to admission of the statements, and that the statements were not made in furtherance of a conspiracy. A criminal conspiracy is defined in LSA-R.S. 14:26 in pertinent part:
"A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination."
With respect to defendants' argument, our Supreme Court has held that a prima facie case of conspiracy is presented when the State introduces either direct or circumstantial evidence which, if unrebutted, is sufficient to establish the fact of conspiracy. State v. Johnson, 438 So.2d 1091 (La.1983); State v. Brown, 398 So.2d 1381 (La.1981). However, under LSA-R.S. 15:455, the State cannot rely on the coconspirators' declaration itself to supply the prima facie case of conspiracy. The conspiracy must be established by separate *1291 admissible evidence. State v. Meredith, 403 So.2d 712 (La.1981); State v. Millet, 356 So.2d 1380 (La.1978). At the preliminary examination and other pretrial hearings, the trial court ruled that the testimony and evidence presented by law enforcement officers, State fire marshall investigators, insurance investigators, and other competent witnesses were adequate and independent of declarations by the conspirators to prove that defendants conspired to burn Nichols' house to defraud State Farm. Moreover, when the hearings are conducted out of the presence of the jury, as it was here, there is no rule of evidence which would prevent the State from establishing the conspiracy by the testimony of coconspirators or by declarations or acts of the conspirators. State v. Rittiner, 341 So.2d 307 (La.1976). The trial judge further found that the statements were made in furtherance of the conspiracy. The pretrial rulings were not assigned as error, therefore, the appellate court is effectively prevented from reviewing the correctness of these rulings. After careful review of the record, we cannot say that the trial judge erred in admitting the hearsay statements into evidence.
We now focus our attention on the question of whether defendants' Sixth Amendment constitutional right of confrontation has been violated. Defendants contend that the hearsay statements are only admissible if the declarant, Nichols, is determined to be "unavailable". Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); State v. Orlando, 456 So.2d 1021 (La.App. 2nd Cir.1984), writ denied, 460 So.2d 1043 (La.1984). "[A] witness is not `unavailable' for purposes of the... exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). However, the law does not require the doing of futile act; if no possibility of procuring the witness exists, good faith demands nothing of the prosecution. But if there is a possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation. Even then, Nichols' statement is admissible only if it bears adequate "indicia of reliability". Roberts, supra.
At trial, Nichols was a fugitive from justice for whom a bench warrant was issued. Prior to trial, the State suspected he might be in Conroe, Texas. The prosecution made telephone calls and sent telegrams to authorities in Conroe in an effort to apprehend Nichols, but to no avail. The State maintains that it has met the requirements of Roberts and Orlando, supra. We agree. Reliability can be inferred where the evidence, Nichols' out-of-court statements, falls within a firmly rooted hearsay exception. Roberts, supra. Under LSA-R.S. 15:455, the statements clearly fall within the hearsay exception as the statement of a coconspirator. Furthermore, the efforts on the part of the prosecution were sufficient to satisfy the good faith requirements, since the lengths to which the prosecution must go to produce a witness is a question of reasonableness. California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). An injustice would be created absent introduction of the statements by Nichols to Homan. The jury would have been thoroughly confused as to why Nichols hired Donnie and Judy Hall to torch his house for a fee. Having found the State's actions to be reasonable under the circumstances, and the hearsay statements to fall within a recognized exception, we conclude that this assignment of error is without merit.
The Halls further contend that statements made by Nichols to Dan Fletcher during a routine investigation of the fire were inadmissible hearsay. The statements complained of concern Nichols' actions and whereabouts prior to the fire and do not implicate anyone with the offenses. There was no reasonable possibility that the statements complained of might have contributed to the convictions. The record reflects that the trial court was properly able to declare a belief beyond a reasonable *1292 doubt that the hearsay statements by Fletcher were harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. Phagans, 412 So.2d 580 (La.1982). Fletcher's statements were not prejudicial to defendants; they were merely outweighed by the testimony of Homan and others throughout the trial. For these reasons, Fletcher's hearsay testimony amounted to harmless error. This assignment of error is without merit.

ASSIGNMENT OF ERROR TWO
The Halls contend that the trial court erred in allowing Homan to testify about Judy Stringer Hall's and Donnie Hall's participation in fraudulent automobile accidents. They argue that this constituted other crimes evidence which was inadmissible since the State failed to comply with the guidelines set forth in State v. Prieur, 277 So.2d 126 (La.1973).
The evidence complained of was initially brought out by defense counsel during his cross-examination of Homan. Under cross-examination, Homan testified about working for Orville Stringer doing arson jobs and fraudulent car wrecks to collect insurance proceeds. On redirect the State asked Homan what part did defendant, Judy Stringer Hall, have in the bogus car accidents. Homan testified that she filled out the insurance forms; he did not remember defendant, Donnie Hall, being involved. The trial court allowed the redirect testimony because defense counsel "opened the door" for its introduction.
The State contends that once the other crimes evidence was introduced by defense counsel on cross-examination, under R.S. 15:281 the matter became a legitimate area for explanation on redirect examination and the State was not confined to adherence of the Prieur requirements. R.S. 15:281 provides:
"The redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect."
The Halls urge that State v. Ghoram, 290 So.2d 850 (La.1974), is dispositive of this issue which holds that: "... the rules applicable to the introduction of prior offenses under R.S. 15:445 and 15:446 apply at every stage of the trial, including the State's cross-examination or rebuttal."
The procedural guidelines set forth in Prieur necessarily dictate that the State have knowledge of the other crime evidence prior to trial. The protection afforded a defendant under these safeguards do not encompass utterances of other crimes evidence initiated by defense counsel on cross-examination. The purpose of the Prieur guidelines was stated in Justice Calogero's concurring opinion in State v. Ghoram, supra:
"Those five guidelines of course speak for themselves. Essentially however, they are designed, in fairness, to alert the defendant to what crimes, uncharged, the State intends to use, to cause by the trial court a studied consideration of the admissibility of the evidence sought to be introduced, and to assure that in the event such evidence is introduced proper instructions as to the purpose of such introduction is afforded the jury."
We see no conflict in recognizing the procedural guidelines set forth in Prieur and in allowing evidence of other crimes when the defense "opened the door" for such evidence. This is not a new development in criminal law. The Supreme Court has sanctioned the introduction of damaging evidence when the defense opens the door. In State v. Edwards, 420 So.2d 663 (La. 1982), defendant contended that the trial court erred in permitting the introduction of other crimes evidence, i.e., an earlier crowbar incident and evidence that defendant spent part of the early morning prior to *1293 the shooting at the home of her paramour. Defendant argued that no adequate notice was given detailing the offenses and the reason for their offering, no hearing was held to determine the adequacy of notice or the admissibility of this evidence, and no instructions were given the jury regarding their consideration of the evidence. The Supreme Court found the evidence was introduced by the defense through defendant's own testimony and held:

"Admittedly, this evidence was damaging to the defense; however, the defendant `opened the door' for its introduction by testifying concerning her activities between the prior altercation and the shooting. It is well settled that where one side has gone partially into a matter on examination-in-chief, the other side may go fully into it on cross-examination. State v. Nugent, 116 La. 99, 40 So. 581 (1906). Mere doubt as to the propriety or the extent of cross-examination is always resolved in favor of the cross-examination. State v. Lane, 292 So.2d 711 (La.1974)."

In the present case, the other crimes evidence was introduced during defense counsel's cross-examination of Homan. Under these circumstances we find defendants "opened the door" for further damaging evidence by the State's redirect examination of the other crimes evidence. Accordingly we find that the trial court did not err, therefore, this assignment is without merit.

ASSIGNMENT OF ERROR THREE
The Halls also contend that the trial court erred in refusing their special jury instructions. However, they failed to brief this assignment of error and it is, therefore, considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

DECREE
For the foregoing reasons, the convictions and sentences of defendants, Judith K. Stringer Hall and Donnie Hall, are affirmed.
AFFIRMED.