734 So.2d 658 (1999)
STATE of Louisiana
v.
Milton JACKSON, Defendant-Appellant.
No. CR98-277.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1999.
*659 Anthony L. Walker, Mamou, C. Brent Coreil, Dist. Atty., for State of La.
Milton Jackson, pro se.
BEFORE: YELVERTON, WOODARD, and PICKETT, Judges.
WOODARD, Judge.
This is a pro se appeal of the conviction and sentence of Milton Jackson, the defendant, for possession of cocaine. The state originally charged him with possession of cocaine with intent to distribute. The defendant's trial by jury concluded on May 13, 1997. The jury found him guilty of the lesser included offense of possession of cocaine. On August 1, 1997, the trial court sentenced him to forty years at hard labor and ordered him to pay a fine of $75,000.00. His sentence was based on La. R.S. 40:967(F)(1)(a), which provides an enhanced sentencing range for possession of more than twenty-eight grams, but less than 200 grams of cocaine. At trial, the defendant retained Mr. Mack Frank to represent him. After his conviction, he dismissed Mr. Frank and sought the right to proceed pro se on his appeal. We reverse the conviction and set aside the sentence and remand for a new trial.

FACTS
The police in Evangeline Parish and the town of Mamou, Louisiana, began an investigation of the drug dealers in the Mamou area. Darrin Allison (Allison) had been arrested for possession of cocaine and agreed to help the police in return for his charge being dismissed. The defendant was one of the targets of the investigation. On February 17, 1996, Allison rode with him to Lafayette, Louisiana and visited some girls in a dormitory at the University of Southwestern Louisiana. On the return trip to Mamou, Allison noticed he had a package wrapped like a fat roll of "Ritz crackers," and he either kept the package on the car seat or had Allison hold it whenever he stepped out of the car. The defendant never told Allison what was inside the package and Allison never asked. At trial, Allison admitted that he "assumed" it was drugs.
At one of the stops along the way from Lafayette to Mamou, Allison used a pay phone to call the police chief in Mamou and told him that the defendant had a package which looked like "cookies" of crack cocaine. The police set up surveillance at the defendant's sister's home, where the defendant was going to drop off Allison. When he arrived at his sister's home in Mamou, the police blocked his car. Allison jumped out of the car and ran away. One of the police officers, Kent Moody, entered his car on the passenger side and told him that he was under arrest. He jumped out of the car and was tackled by several police officers. After he broke *660 away from them, he ran a few steps and was tackled again and subdued. The police found the package under the car. He claims it was "planted" by the officers.
The week after his arrest, the package was sent to the Acadiana Crime Lab for analysis. The crime lab completed its analysis of the contents and sent the Scientific Analysis Report indicating that the package contained cookies of cocaine weighing a total of 190 grams. The crime lab returned the package to the Mamou Police Department in March of 1996. Officer Moody placed the cocaine in the evidence safe in his office. During the weekend before January 27, 1997, Officer Moody's office was burglarized, the evidence safe was opened and the drugs and money, held in the evidence safe, were gone. At trial, the state introduced the certified crime lab analysis report, pursuant to La.R.S. 15:499-500.1.
The jury found the defendant guilty of the lesser responsive verdict of possession of cocaine. He was later sentenced to forty years at hard labor, pursuant to La. R.S. 40:967(F)(1)(a), and he was fined $75,000.00.

ASSIGNMENTS OF ERROR
The defendant asserts the following assignments of error:
1. Whether or not counsel was ineffective for not filing a Motion for Post Verdict Judgment of Acquittal; and whether or not the evidence is insufficient to convict the appellant for possession of a controlled dangerous substance, to-wit: cocaine.
2. Whether or not the trial court erred in allowing the prosecutor to ask leading questions.
3. Whether or not counsel was ineffective for not objecting when the prosecutor made a state witness talk about inadmissible evidence of other crimes that appellant was never charged with and for not asking for a mistrial.
4. Whether or not the trial court committed a reversible error by not allowing defense counsel to re-cross examine Darrin Allison.
5. Whether or not counsel was ineffective for asking Kent Moody if he ever arrested appellant before.
6. Whether or not counsel was ineffective for not objecting when the prosecutor asked Kent Moody if he ever sworn [sic] out a warrant for appellant's arrest; and whether or not counsel was ineffective for not objecting when the prosecutor admitted arrest warrant into evidence.
7. Whether or not the trial judge committed a reversible error by allowing the state to admit a request for scientific analysis into evidence over appellant's objection.
8. Whether or not the trial judge committed a reversible error by not allowing defense counsel to re-cross examine Kent Moody.
9. Whether or not counsel was ineffective for not objecting when the prosecutor called Lorette Rapp as a witness.
10. Whether or not the trial court committed a reversible error by allowing the state to admit the lab report into evidence over appellant's objection.
11. Whether or not the trial court committed reversible error by giving a special charge of flight to the jury.
12. Whether or not the trial court committed a reversible error by denying defense counsel's Motion for Mistrial.
13. Whether or not the trial court committed a reversible error by denying defense counsel's Motion for a Direct Verdict.
14. Whether or not counsel was ineffective for not objecting when the prosecutor told the jury that the evidence at the trial was uncontradicted.

*661 15. Whether or not counsel was ineffective for not objecting when the prosecutor told the jury that he does not have to have the drugs in court.
16. Whether or not counsel was ineffective for not objecting when the prosecutor talked about the street value of the drugs.
17. Whether or not counsel was ineffective for not subpoenaing James L. Simon at appellant's Motion for a New Trial Hearing.
18. Whether or not the trial court committed a reversible error by denying counsel's Motion for a New Trial on July 31, 1997.
19. Whether or not the trial court imposed an illegally excessive sentence on appellant.
20. Whether or not counsel was ineffective for not filing a Motion to Recuse Anthony L. Walker.
21. Whether or not counsel was ineffective for not filing a Motion to Recuse Preston N. Aucoin.
22. Whether or not counsel was ineffective for not filing a Motion for Independent Examination of Evidence.
23. Whether or not counsel was ineffective for not subpoenaing any of appellant's witnesses at appellant's trial.
24. Whether or not counsel was ineffective for not subpoenaing James L. Simon at appellant's trial.
25. Whether or not counsel was ineffective for not filing a Motion to Suppress the lab report and attacking the illegal stop and illegal arrest of the appellant in the motion.
26. Whether or not counsel was ineffective for not subpoenaing James L. Simon at appellant's Motion to Release Investigative Report Hearing; and the trial court judge should have conducted an in camera inspection of said report.
27. Whether or not the trial court committed a reversible error by denying appellant's Motion for a New Trial on April 23, 1998, and not giving appellant an evidentiary hearing.
28. Whether or not counsel was ineffective for not filing a written Motion for a Continuance; and whether or not the trial court committed a reversible error by denying counsel's Motion for a Continuance.
29. Whether or not counsel was ineffective for not filing a written Motion to Quash; and whether or not the trial court committed a reversible error by denying counsel's Motion to Quash.
30. Whether or not appellant received ineffective assistance of counsel.
31. Whether or not appellant's case should be tried with a different judge and different prosecutor on remand from the Third Circuit Court of Appeal.
32. Whether or not there are any errors patent on the face of the record.

LAW
By reason of our decision to reverse the defendant's conviction, vacate his sentence and remand for a new trial, we pretermit discussion of the single Error Patent and all of the other Assignments of Error, except for five, six, and twelve which are necessary for our decision.

ASSIGNMENTS OF ERROR NUMBERS 5, 6, AND 12
The assignments of error five and six claim ineffective assistance of counsel arising from defense counsel asking Officer Kent Moody:
Q. Now Milton Jackson, have you ever arrested him before?
A. Yes sir.
Defense counsel asked this question on cross examination of the state's witness, and no other information about his prior *662 arrest was mentioned. From a review of the cross examination, it appears that the defendant's attorney was trying to show that Allison was an unreliable informant who was willing to say or do anything to get out of a pending drug charge and that the police were so focused on the defendant that they were willing to do anything to arrest him.
The motives of the police and the possibility of improper conduct were not mere speculation. Prior to coming to the Mamou Police Department, Officer Moody had been fired by another police department after he was convicted of two misdemeanors for unauthorized use of movables in police custody. He also had been indicted for "planting" marijuana on a suspect, but this indictment was dismissed because another officer was found guilty. At the time of trial, Officer Moody was on suspension because of his neglect in improperly handling the 190 grams of cocaine seized in this case and $800.00 in cash from another case, which were stolen from his office safe.
On redirect examination, the state questioned Officer Moody about the prior arrests of Allison and his brother, Wilson "Porky" Allison. When the state asked the witness on what charge had the defendant previously been arrested, counsel for the defendant objected. The state argued, and the trial court agreed, that the defendant had "opened the door" to this issue, and the objection was overruled.
The state went into great detail about the defendant's prior arrest for possession of cocaine and the fact that the defendant agreed to forfeit $1,000.00 in cash, seized at the time of arrest, in return for dismissal of the charge. In addition to the testimony of Officer Moody, an affidavit of non-prosecution and the affidavit in support of the arrest warrant were introduced into evidence and circulated to the jury.
The defendant claims that his counsel was ineffective for asking about his prior arrest, not objecting to the state's questions on redirect, and not objecting to the introduction of the documents about the arrest. Actually, defense counsel did object to the state's questions during redirect examination. As for the initial question on cross examination, we choose to defer to defense counsel's decision to reveal the fact of a previous arrest as part of his trial strategy. See State v. Green, 27,652 (La.App. 2 Cir. 1/24/96); 666 So.2d 1302, 1307-8, writs denied, 97-0504 (La. 10/31/97); 703 So.2d 14.
In assignment of error number twelve, the defendant complains that the trial court erred in denying his motion for mistrial. We agree. It should have been granted for the reasons below.
The prejudice suffered by the defendant from the improper introduction of this other crimes evidence was substantial. "Generally, evidence of other acts of misconduct is inadmissible; however, there are statutory and jurisprudential exceptions to this exclusionary rule, when the evidence of other acts tends to prove a material issue and has independent relevance other than showing that the defendant is a man of bad character." State v. Mitchell, 94-521 (La.App. 3 Cir. 11/2/94); 649 So.2d 569, 571. In its appellate brief, the state cites no justification in jurisprudence or statutory law for the introduction of the evidence of the prior arrest and dismissal of the charge, and at trial, all that the state offered as justification for its admission was that the defense counsel had "opened the door." The jurisprudence reviewing cases of other crimes evidence being admitted after a defendant "opens the door" has developed separate lines of decisions with apparently inconsistent results, affirming or reversing convictions. The key determinative factor is whether the probative value of the evidence outweighs the prejudicial impact of its admission. La.Code Evid. art. 403.
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. La.Code *663 Evid. art. 404(B)(1). However, evidence of other crimes, wrongs or acts may be admissible for other purposes, which are listed in Article 404(B)(1). In State v. Johnson, 94-1379 (La. 11/27/95); 664 So.2d 94, the supreme court provided an overview of the use of evidence of other crimes, wrongs or acts. The general rule is that evidence of other crimes, wrongs or acts is inadmissible unless statutory and jurisprudential prerequisites are met. See also State v. McArthur, 97-2918 (La. 10/20/98); 719 So.2d 1037. This general rule ensures that a defendant who has committed other crimes, wrongs or acts will not be convicted of a present offense simply because he is perceived as a "bad person," irrespective of the evidence of his guilt or innocence. A conviction should be based on guilt and not on character. Johnson, 664 So.2d at 99. The state in the present case never alleged it was introducing the evidence about the defendant's prior arrest to prove any of the factors listed in article 404; the state simply said it could introduce the evidence because the defense counsel had "opened the door" with his question regarding whether the officer had ever arrested the defendant.
The courts of this state have time and again refused to allow prosecutors to exploit a defense counsel's inattention, omission, or mistake by making repeated and persistent prejudicial comments and references about inadmissible evidence of other crimes of the defendant. The leading case is State v. Smith, 418 So.2d 534 (La.1982):
Even though defense counsel did not object to the earlier references to the arrest of the defendant, the fact that the prosecutor made a prejudicial reference to the arrests without objection during questioning does not grant him license to exploit defense counsel's inattention, omission, or mistake by repeated prejudicial comments in the same vein. See State v. Lee, 346 So.2d 682 (La.1977). On the face of the record, this is exactly what was attempted in this case. The following statement from Lee is equally applicable and appropriate here:
Our rules are not intended to be available for manipulation by the defense or by the state. 346 So.2d at 685.
While the evidence in this case may be sufficient to establish defendant's guilt beyond a reasonable doubt, that is hardly an excuse for the prosecutor to be allowed to make such a statutorily impermissible comment during his argument.
Id. at 537 (emphasis added).
In the Smith case, there was no objection to the prosecutor's first question to the defendant about any prior arrests, and, thus, the otherwise inadmissible evidence was introduced to the jury. However, defense counsel objected to subsequent questions and to comments about the prior arrest during closing arguments. The supreme court did not find that the first mistake or omission of defense counsel entitled the state to persist in introducing further inadmissible evidence of the prior arrest.
Likewise, Mr. Frank's question about the defendant being previously arrested by Officer Moody was a mistake, but it did not entitle the state to introduce details about the defendant's prior arrest for possession of cocaine and the agreement to dismiss the charge. In State v. Boutte, 93-1249 (La.App. 3 Cir. 4/6/94); 635 So.2d 617, this court relied upon the Smith case to reverse a conviction even though defense counsel had allowed the prosecutor to refer to evidence of another conviction not introduced into the record three times before he objected. In Boutte, this court found that there was no evidence that the state continued to flagrantly discuss inadmissible other crimes evidence, but rather "an over-excited prosecutor, caught up in the heat of the moment," repeatedly made reference to the inadmissible evidence.

*664 Unfortunately, whatever the motive of the state, the result is the same. The defendant was prejudiced by the prosecutor's repeated references to other crimes as to which evidence was not admitted. This evidence was not part of the record and thus the state's closing argument went beyond the evidence presented at trial in violation of La.C.Cr.P. art. 774.
State v. Boutte, 635 So.2d at 620.
The Smith and Boutte decisions are consistent with State v. Williams, 575 So.2d 452 (La.App. 4 Cir.), writ denied, 578 So.2d 130 (La.1991), and State v. James, 569 So.2d 135 (La.App. 1 Cir. 1990), cited by this court in Mitchell, 649 So.2d 569. However, the Mitchell decision distinguished James and Williams and found the admission of the other crimes evidence, after the defendant "opened the door," to be proper. Mitchell is the most recent in a line of cases, permitting the admission of other crimes evidence after a defendant "opens the door."
In Mitchell, the defendant testified that he had never sold, used, nor exchanged cocaine for sex; however, the defendant had given a statement to the police at the time of his arrest, denying he had sold cocaine, but admitting he had exchanged cocaine for sex. On cross examination by the prosecutor, the defendant was asked about his prior statement to the police, which was inconsistent with his trial testimony. The court upheld the admission of the evidence since there was an independent basis for relevancy, that being impeachment. This court also found that the limitation of La.Code Evid. art. 608(B), prohibiting inquiry into or proving particular acts, vices, or courses of conduct of a witness for the purpose of attacking his character for truthfulness, other than conviction of a crime, was inapplicable because the defendant brought up the issue of past drug distribution during his direct examination, and the prosecution then cross examined the defendant on the same issue. Mitchell is distinguished from the present case because the defendant never testified and, thus, the independent basis for relevancy, i.e. impeachment, did not exist. Also, the state in the present case did not simply seek an explanation of the testimony given on cross examination but rather introduced details going far beyond the simple answer given previously.
Many of the cases that have upheld the introduction of other crimes evidence, after a defendant "opens the door," appear to rely upon a fairness standard; that is, if a defendant attempts to establish a defense or to attack the credibility of a state's witness by referring to other crimes, wrongs or acts, then the state may ask questions about the other crimes, wrongs or acts in order to refute the defendant's claims or explain the true context of the evidence. It is well settled that where one side has gone partially into a matter on examination-in-chief, the other side may go fully into it on cross examination. State v. Edwards, 420 So.2d 663, (La.1982).
For example, in State v. Ingram, 29,172 (La.App. 2 Cir. 1/24/97); 688 So.2d 657, writ denied, 97-0566 (La.9/5/97); 700 So.2d 505, the defendant was charged with three counts of rape of his girlfriend's young daughter. He attempted to establish that he was simply engaging in normal discipline of the teenager by inquiring why the victim had waited so long to tell anyone she had been abused. The court permitted the state on redirect to inquire into the subject of the beatings, as far as was necessary for a proper explanation of the testimony given on the cross examination regarding the other crime, i.e., the beatings; that is, the victim was afraid of the defendant. Id. at 668. In State v. Mistretta, 490 So.2d 462 (La.App. 4 Cir. 1986), the defendant was charged with burglary and, at trial, he put his wife on the stand to establish an alibi. The wife testified that "because her husband [the defendant] had a drug problem and the police had a warrant for his arrest for another burglary he had been hiding in her house continuously *665 during the month [of the crime.]" On cross examination, the state established that the defendant had used heroin and had been arrested for burglary. The state's cross examination in Mistretta clarified what was presented on direct only to the extent that the particular drug used by the defendant was established; the prior testimony about the police having a warrant for the defendant's arrest had already been presented by the defense.
The leading case addressing the problem of the defendant "opening the door" to otherwise inadmissible evidence is Edwards, 420 So.2d 663. The defendant had shot her husband. Among other defenses, she claimed self defense. When the defendant testified, she talked about her concern for her husband's well being after she had hit him on the head with a crowbar, and she talked about her actions from the time of the crowbar incident until the final confrontation and shooting. On cross examination, the state established that after the defendant hit her husband on the head with a crowbar, she went to her paramour's house and had sex with him before she left to confront her husband at his mistress' house. The supreme court ruled that the cross examination was proper because the defense had gone into defendant's activities thereby entitling the prosecutor to full cross examination; the testimony was relevant and material to the responsive verdict of manslaughter on the question of whether or not defendant's blood had cooled, as well as being relevant to the credibility of the testimony of the defendant that she was concerned about her husband's well-being. Id. at 674-75. The independent basis for relevancy in Edwards was the need to negate any claim that the defendant acted in the heat of blood and to attack the defendant's credibility that she was genuinely concerned about her husband's condition. On the contrary, in the present case, it is impossible to determine the independent basis for relevancy of the details about the defendant's prior arrest and dismissal of prosecution.
The one case that does not appear to rely upon any independent basis of relevancy is State v. Stringer, 496 So.2d 1287, (La.App. 3 Cir.1986), writ denied, 503 So.2d 474 (La.1987). In Stringer, the defendant and her second husband were charged with conspiring to commit arson to defraud an insurance company. One witness for the state, Homan, had been asked by the homeowner to burn the house, but later the homeowner told Homan he had hired the defendants to do the job. On cross examination by the defense, Homan was asked about his previous employment by the defendant's deceased first husband in an arson for hire and bogus automobile accident business that defrauded insurance companies. On redirect, the state asked Homan what part the defendant had in the bogus car accidents, and the court allowed Homan to testify that she filled out the insurance claim forms.
This court agreed that once the other crimes evidence was introduced by the defendant on cross examination, it "became a legitimate area for explanation on redirect." Id. at 1292. This court rejected the defendants' objections that the requirements of State v. Prieur, 277 So.2d 126 (La.1973), applied. Unlike Edwards, the Stringer case does not say what, if any, independent basis for relevancy existed to admit the other crimes evidence. Unlike Mitchell, the other crimes evidence was not elicited from the defendant while he was testifying, but from another witness. As the Stringer opinion arose before the enactment of the Code of Evidence, its value is questionable in light of La.Code Evid. arts. 403 and 404(B)(1).
We consider the admission of evidence about the details of the defendant's prior arrest and circumstances surrounding the dismissal of prosecution unfairly prejudicial for another reason. Assuming for the sake of argument that instead of the defendant having been simply arrested for possession of cocaine, he had been convicted of it, the state could not have introduced *666 evidence of the prior conviction unless the defendant had taken the stand to testify. La.Code Evid. art. 609.1. Even if the defendant had taken the stand and he was subject to impeachment for his prior conviction, the details about the offense leading to the prior conviction would not have been admissible except in very limited circumstances. La.Code Evid. art. 609.1(C); see also, State v. Powell, 28,788 (La.App. 2 Cir. 11/1/96); 683 So.2d 1281, writ denied, 97-0092 (La. 5/30/97); 694 So.2d 243. Furthermore, La.Code Evid. art. 608(B) limits the admissibility of particular acts, vices, or conduct to impeach the character of a witness; thus, if the defendant had taken the stand, the state could not have introduced the evidence of the prior arrest to attack his credibility.
Therefore, it is clear that if the details about a prior offense leading to a conviction cannot be introduced except in very limited circumstances, then the details about a prior arrest on a charge that was dismissed and did not lead to a conviction should not have been admitted. This error began with a mistake by the defense counsel, was compounded by the state's decision to exploit the error, and the trial court's ruling allowing the improper exploitation of it.
"Because the admission of the other crimes evidence was erroneous, we are required to determine if the error was harmless. See State v. Johnson, 94-1379 (La. 11/27/95); 664 So.2d 94 (erroneous admission of other crimes evidence is subject to harmless error analysis under Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967))." McArthur, 719 So.2d at 1037. We "must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." Chapman, 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed.2d 705. We must be able to say that the jury's verdict in this case was surely unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); State v. Sanders, 93-0001 (La. 11/30/94), 648 So.2d 1272. Considering all the facts of this case, particularly that the drugs were not found directly in the defendant's possession, but at some distance from him, and evidence of his possession was based in part upon the testimony of an informant who needed a deal with the state, we can not say that the trial court's decision to permit the state to introduce other crimes evidence of a similar offense of possession of cocaine was harmless error beyond a reasonable doubt and that the jury's verdict was surely unattributable to this error.

CONCLUSION
The trial court's decision to admit evidence of other crimes without the state's compliance with the statutory and jurisprudential guidelines was not harmless error beyond a reasonable doubt in the defendant's trial. The defendant's conviction and sentence are vacated. The case is remanded to the trial court for a new trial.
REVERSED; CONVICTION AND SENTENCE VACATED; REMANDED FOR NEW TRIAL.